1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KIMBERLY A. BALES, | ) | 1:09-cv-2243 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.  42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 7, 8.)  On April 8, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## FACTUAL BACKGROUND

Plaintiff was born in 1969 and previously worked as an Account Analyst and Accounting Supervisor.  (Administrative Record ("AR") 107-14.)  Plaintiff claims that her ability to work is limited by chronic pain in her arms and legs, systemic lupus, and connective tissue disorder.  (AR 115.)  Based on those complaints, Plaintiff filed an application for DIB on April 28, 2006.  (AR 88-93.)

### A.    Medical Evidence

Plaintiff was diagnosed with lupus in 1993.  (AR 171.)   Plaintiff began experiencing chronic pain and generalized fatigue in 2004.  (AR 171.)  Dr. Campbell is Plaintiff's primary care physician.  (AR 308-29.)  Plaintiff was also treated regularly by Dr. Son T. Dihn for pain management.  (AR 271-87.)  In an attempt to pinpoint the source of Plaintiff's pain, Plaintiff was referred to several specialists.  (AR 182-257.)  To date, the etiology of the pain has not been identified.  (AR 206, 331, 389.)

In August 2003, Plaintiff participated in a nerve conduction study which showed bilateral peroneal neuropathy.[2]  (219-20.)

In July 2004, an electromyogram ("EMG")[3] showed a lack of peroneal nerve activity and was considered normal.  (AR 219-20, 171.)

In December 2004, Dr. Dihn ordered an x-ray of Plaintiff's spine which showed straightening of the normal cervical lordosis,[4] mild to moderate bilateral foraminal stenosis,[5] right greater than left

---

[2] Peroneal denotes that which pertains to the fibula or to the lateral aspect of the leg. *Dorland's Illustrated Medical Dictionary* 1440 (31st ed. 2007) (hereinafter *Dorland's*).  Neuropathy denotes a functional disturbance or pathological change in the peripheral nervous system. *Id.* at 1287.

[3] Electromyography denotes an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation. *Dorland's*, *supra*, at 609.

[4] Cervical lordosis, or cervical curvature, denotes the dorsally concave curvature of the cervical spinal column when seen from the side. *Dorland's*, *supra*, at 1090.

[5] Spinal stenosis denotes narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space; symptoms are caused by compression of the cauda equina and include pain, paresthesias (abnormal touch sensations), and neurogenic claudication (limping accompanied by pain and paresthesias in the back, buttocks, and lower limbs that is relieved by stooping or sitting). *Dorland's*, *supra*, at 375, 1404, 1795.

at C5-C6 and left greater than right at C6-C7 secondary to uncinate process hypertrophy.[6] (AR 180.) However, there was no disc herniation or cord compression.  (AR 180.)

Plaintiff was referred to the neurology and rheumatological clinics at UCLA. (AR 182.)  In June 2005, Plaintiff saw Drs. Taylor and Ferrante at the UCLA rheumatological clinic.  Plaintiff was diagnosed as having a questionable undifferentiated collagen vascular disorder[7] evidenced by discoloration of the toes.  (AR 182.)  Extensive studies were performed which were notable for an elevated sedimentation rate,[8] a positive C-reactive protein, elevated C3 and C4 levels, positive ANA[9] and DNA tests.  (AR 227-35, 241-49.)  Plaintiff was also seen by Drs. Buxton and Porter at the UCLA neurology clinic in July 2005.  (AR 182.)  EMG studies were performed, and the results were grossly normal.  (AR 208-16.)  However, Dr. Buxton noted that these "studies are not entirely sensitive for sensory-only radiculopathy."[10]  (AR 208-16.)

On July 26, 2005, Dr. Campbell requested that Plaintiff be excused from work until August 18, 2005.  (AR 328.)

In August 2005, a magnetic resonance imaging ("MRI")[11] of Plaintiff's brain was normal, but showed two small foci in the anterior cerebral white matter which were nonspecific in appearance and which also indicated the presence of paranasal sinus disease. (AR 223-24.) An MRI of the spine showed no abnormalities.  (AR 226.)

---

[6] Hypertrophy denotes the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells. *Dorland's*, *supra*, at 910.

[7] Collagen disorder denotes any inborn error of metabolism involving abnormal structure or metabolism of collagen. *Dorland's*, *supra*, at 556.

[8] Erythrocyte sedimentation rate denotes the rate at which erythrocytes, or red blood cells, precipitate out from a well-mixed specimen of venous blood; an increase in rate is usually due to elevated levels of plasma proteins. It is increased in, *inter alia*, active inflammatory disease and anemia. *Dorland's*, *supra*, at 652, 1618.

[9] ANA refers to antinuclear antibodies, which are antibodies directed against nuclear antigens; ones against a variety of different antigens are almost invariably found in systemic lupus erythematosus and are frequently found in, *inter alia*, rheumatoid arthritis, systemic sclerosis, and mixed connective tissue disease. *Dorland's*, *supra*, at 71, 102.

[10] Radiculopathy denotes disease of the nerve roots. *Dorland's*, *supra*, at 1595.

[11] Magnetic resonance imaging, or MRI, denotes a method of visualizing soft tissues of the body by applying an external magnetic field that makes it possible to distinguish between hydrogen atoms in different environments. *Dorland's*, *supra*, at 928.

On September 19, 2005, in response to a long-term disability questionnaire, Dr. Campbell stated he believed that Plaintiff should be restricted from any physical activity and was further limited by a difficulty in concentrating. (AR 326.) Dr. Campbell opined that "claimant could sit, stand, or walk less than 1 hour." (AR 326.) In Dr. Campbell's opinion, these conclusions were evidenced by "objective findings" of palpable tenderness to Plaintiff's extremities. (AR 325-26.) He expected Plaintiff to be able to return to her prior level of functioning by January 19, 2006. (AR 326.) On December 5, 2005, Dr. Campbell revised this estimate to extend the amount of time Plaintiff would be unable to work until February 1, 2006. (AR 323.) On February 14, 2006, this estimate was extended to April 1, 2006. (AR 319.) On April 25, 2006, this estimate was again extended to August 1, 2006. (AR 317.)

In March 2005, Plaintiff was seen by Dr. Scott Gottlieb, an anesthesiologist at UCLA. (AR 182.) Dr. Gottlieb found that there was no neurological cause for Plaintiff's pain and suggested she follow up with a physician regarding her undifferentiated collagen vascular disease.[12] (AR 182.)

In June 2006, Plaintiff was examined by state agency examining physician Dr. Min-Ning Huang. (AR 260-62.) Dr. Huang noted that Plaintiff changed positions frequently in order to sit comfortably, but found no orthopedic abnormalities. (AR 260-62.) Dr. Huang noted that Plaintiff had no discoloration in her extremities. (AR 261.) Dr. Huang admitted that Plaintiff's undifferentiated collagen vascular disease was beyond his scope of specialty, but that from an orthopedic standpoint, Plaintiff did not have any limitations. (AR 260-62.)

In July 2006, an examination by Dr. Dihn indicated mild tenderness to palpation and pain in the extremities. (AR 286-87.) Although the source of the pain could not be determined, Dr. Dihn did not believe Plaintiff suffered from fibromyalgia.[13] (AR 286.) That same month, Dr. Jim Kim performed blood tests which revealed positive sedimentation rates, ANA, and C3 compliment. (AR

---

[12] Collagen disease denotes any of a group of diseases that, although clinically distinct and not necessarily related etiologically, have in common widespread pathologic changes in the connective tissue; they include, *inter alia*, lupus erythematosus, rheumatic fever, and rheumatoid arthritis. *Dorland's*, *supra*, at 538.

[13] Fibromyalgia denotes pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points. *Dorland's*, *supra*, at 711.

267-70.) Dr. Kim indicated that these findings evidence an inflammatory process, and opined that Plaintiff had an autoimmune disorder. (AR 265.)

In January 2007, Plaintiff was involved in an eight-week research study to test an experimental drug for the treatment of opioid-induced bowel dysfunction for patients with chronic nonmalignant pain. (AR 288-307.) The goal of the experimental drug trial was to study the "safety, effectiveness and tolerability" of a drug which had not yet been approved by the Food and Drug Administration. (AR 288-89.) One of the six participants in the study received a placebo. (AR 289.)

In February 2007, Dr. Bonner, a non-examining state agency physician, found Plaintiff's impairment non-severe because there was no clear etiology for the extremity pain. (AR 330-32.) Dr. Khong, a non-examining state agency physician, affirmed the prior finding of a non-severe impairment because the underlying cause was undetermined, reasoning that the labs for connective tissue disease were essentially normal. (AR 335.)

In August 2007, Plaintiff was seen at Kern County Neurological Medical Group where she underwent a neurological examination. (AR 388-96.) Plaintiff was noted to be "awake and alert and oriented to time, place and person." (AR 394.) This examination showed Plaintiff to have "subjective symptoms of hypoesthesia, parathesia [sic] and algesia involving both arms and legs; however, the detailed neurological examination, especially the sensory examination [was] very normal. The symptoms [were] therefore very subjective. Thus far most of the laboratory testing [had] been normal." (AR 395.)

In October 2007, a nerve conduction study was performed with normal results in Plaintiff's upper extremities; however, there was some evidence of lower extremity peroneal sensory neuropathy. (AR 393-96.)

In October 2007 and February 2008, neurological examinations were performed with normal results. (AR 393-96, 389.)

In an effort to help alleviate Plaintiff's pain, Plaintiff had been prescribed strong narcotic medications. Plaintiff complained that the side effects of these drugs, which included constipation and an inability to concentrate, contributed to her inability to work. (AR 120.)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration. (AR 44-54.)  Consequently, on March 20, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 68.)

A hearing was held May 2, 2008, before ALJ Stephen W. Webster, at which Plaintiff and a vocational expert ("VE") testified. (AR 21-43.)

**1.      Plaintiff's Testimony**

In his decision, the ALJ summarized Plaintiff's testimony at the May 2008 hearing as follows:

> [Plaintiff] testified she lives with her husband, has no children, and has a valid driver's license and drives, but limits driving because she has a tendency to get confused and lost.  She said her parents live 10 minutes away from her, but it ended up being 20 minutes away as she got disoriented and had to call her husband to come and get her. [Plaintiff] related her husband usually takes her places.  She testified she could manage personal grooming.  She alleges she cannot keep up with cooking and cleaning, can microwave food, and her husband folds and puts the laundry away.  She said she does not work in the yard or garden.  The claimant also testified she watches television about 2-3 hours a day, and visits with friends on occasion.  She related she is not able to attend church. [Plaintiff] additionally testified she has a high school diploma, plus 2 years of college in accounting and business administration.  She has received no additional vocational training, and has not worked since April 21, 2005.  She said she is receiving long-term disability.  She is 5'8" and weighs 180 pounds.  The claimant said she had gained about 50 pounds in the last 2 years.  She alleges she goes to several doctors for pain management monthly, and see[s] her primary care doctor every 2 months.  The claimant testified further she sees a rheumatologist and urologist as well.  She stated she has neuropathy in her hands and feet, and has pain in bilateral feet, legs, arms, hands, neck and back.  She also has headaches. [Plaintiff] also testified the medications only take the edge off the pain, and do not completely alleviate the pain.  She related she can only sit 15-20 minutes, and stand a maximum of 10 minutes before she has extreme pain, and her legs turn blue because of intense pain.  She alleges she can walk ½ block.  She testified she lives on a cul-de-sac, but cannot make it to the end of the cul-de-sac to get the mail.  The claimant also testified it was a struggle lifting her toy poodle that weighs 6 pounds.  She alleges she has trouble picking up small items such as a coin, can pick up a pencil, but drops things due to clumsiness.  She denied a problem with alcohol.
>
> In response to questioning by her [representative], the claimant related she takes several medications which cause side effects including confusion, trouble thinking properly, and difficulty focusing on things.  She alleges her mind is deteriorating, and she is not the person she used to be.  The claimant related she worked in accounting which was detailed work, but now she cannot focus to perform such work.  She related she sleeps very little.  She testified she spends most of the day in bed.  She said she gets up and eats then goes back to bed. [Plaintiff] related her social activities are very limited, i.e., she may visit parents, and may go out to dinner on a rare occasion, but that was a challenge due to pain.  The claimant also testified that if she does not take medications on schedule, she has intense pain, and her husband now . . . monitors her medications.  She related she has sensitivity to sunlight, and

is very pale because she cannot go out in the sun.  She additionally has experienced hair loss.  [Plaintiff] alleges her feet are extremely painful and turn blue so that she is constantly moving her legs, and elevates her legs at home.  The claimant related her hands turn blue as well.  She claims she has extreme fatigue, is literally exhausted, and rests all the time but does not sleep.  She testified she cannot get comfortable due to pain, and that 90% of the day is spent lying down.  She said she does not do anything, but lie in bed.  The claimant stated she has severe constipation, and sometimes does not have a bowel movement for 1-2 weeks which makes her very ill. [Plaintiff] testified she would work if she could.

(AR 15-16.)

### 2.    Vocational Expert's Testimony

Thomas Dachelet, a vocational expert, testified that Plaintiff has a broad range of sedentary[14] to sedentary transferable skills.  (AR 39.)  Dachelet testified that a hypothetical person of Plaintiff's age, education, and work experience would be able to perform all of Plaintiff's sedentary past relevant work, if that person could "could lift ten pounds on occasion; sit/stand six out of eight hours, or had to be able to sit or stand at will; and could occasionally bend, stoop, or crouch."  (AR 39.)  However, such a person could not perform any of Plaintiff's past relevant work, or any other work, if that person were "not be able to complete an eight-hour day or a 40-hour week."  (AR 40.)

### 3.    ALJ's Decision

On June 27, 2006, the ALJ issued a decision that found Plaintiff not disabled from April 21, 2005, through the date of his decision.  (AR 20.)  Specifically, the ALJ found that Plaintiff (1) met the insured status requirements of the Social Security Act through December 31, 2010, (2) had not engaged in substantial gainful activity since April 21, 2005, (3) had four severe impairments: lupus, connective tissue disorder, obesity, and neuropathy, (4) did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526), and (5) could perform her past relevant work as account analyst, skilled sedentary, and accounting supervisor, skilled sedentary.  (AR 14, 19-20.)

---

[14] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

The ALJ found that Plaintiff had the residual functional capacity ("RFC")[15] "to lift and carry 10 pounds occasionally and frequently; sit, stand and/or walk 6 hours out of 8; sit or stand at will; and occasionally bend, sto[o]p, or crouch." (AR 15-19.)

The ALJ gave little weight to the State agency medical consultants. (AR 19.) The ALJ also gave little weight to Dr. Campbell's opinion that Plaintiff could sit, stand, or walk for less than 1 hour, because the opinion "is based heavily on claimant's subjective complaints, and not the objective evidence of record." (AR 19.) Similarly, he found Dr. Campbell's opinion, as stated on the long term disability questionnaire, not controlling because the opinion suggested that Plaintiff would be disabled for less than the required 12-month duration, and because it "lacks all signs, symptoms or other basis, or even a residual functional capacity." (AR 17.)

As for Plaintiff's credibility, the ALJ found the claimant credible and "assigned her subjective complaints the maximal affordable weight." (AR 18.) The ALJ felt that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and while the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are credible, the underlying medical support is absent." (AR 18, 16.) The ALJ summarized Plaintiff's ability to perform daily functions by stating, "[Plaintiff] is able to manage personal grooming, rides in a car, shops in stores 2-3 times per month for 1 hour, pays bills, counts [change], handles a savings account and uses a checkbook, watches television, and visits on phone or with family 3-4 times a month." (AR 19.)

On July 28, 2008, Plaintiff sought review of this decision before the Appeals Council. (AR 86-87.) The Appeals Council denied review on October 7, 2009. (AR 5-8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

---

[15] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1    **C.      Plaintiff's Appeal**

2           On December 28, 2009, Plaintiff filed a complaint before this Court seeking review of the

3    ALJ's decision.   Plaintiff seeks a reversal of the final decision of the Commissioner based on

4    allegations that (1) the ALJ failed to properly assess Dr. Campbell's treating source opinion and

5    (2) the ALJ's credibility analysis is not supported by the evidence.

6                                         **SCOPE OF REVIEW**

7           The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

8    by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

9    1998).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

10   of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

11   determine whether the Commissioner applied the proper legal standards and whether substantial

12   evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d

13   909, 911 (9th Cir. 2007).

14          "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

15   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

16   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

17   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

18   U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

19   evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

20   not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

21   504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

22                                        **APPLICABLE LAW**

23          An individual is considered disabled for purposes of disability benefits if he or she is unable

24   to engage in any substantial, gainful activity by reason of any medically determinable physical or

25   mental impairment that can be expected to result in death or that has lasted, or can be expected to

26   last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

27   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

28   impairments must result from anatomical, physiological, or psychological abnormalities that are

demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If Plaintiff has not engaged in substantial gainful activity, the ALJ proceeds to the Second Step.  In the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments which significantly limits her from performing basic work activities.  *Id.* § 404.1520(c).  If a severe impairment is found, the ALJ proceeds to the Third Step.  In the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* § 404.1520(d).  If claimant's severe impairments do not meet or equal the requirements, the ALJ proceeds to the Fourth Step.  In the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.* § 404.1520(f).  If claimant cannot perform his/her past work, the ALJ proceeds to the Fifth Step.  In the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* § 404.1520(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520.

## DISCUSSION

### A.    The ALJ's Credibility Determination

Plaintiff maintains that the ALJ erred in finding her testimony not credible.  The Commissioner asserts that the ALJ granted Plaintiff's complaints maximal weight; however, there was little objective medical evidence to support her testimony.  Plaintiff responds that, once an impairment reasonably expected to produce the alleged symptoms has been established, she is not required to produce objective medical evidence concerning the degree of pain she experiences.

Additionally, Plaintiff argues the ALJ failed to give weight to the proper objective medical evidence, namely, chronically elevated sedimentation rates and inflammatory markers.

### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2.    Analysis

The ALJ found that Plaintiff had established four severe impairments: lupus, connective tissue disorder, obesity, and neuropathy. (AR 14.) In the first step of the credibility determination process, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to produce some degree of the alleged symptoms; however, he did not believe that these impairments could reasonably be expected to produce the severity or degree of symptoms alleged by Plaintiff. (AR 16.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be specific, clear and convincing.  The ALJ found Plaintiff "presented as a credible witness" and "assigned her subjective complaints the maximal affordable weight."  (AR 18.)  Therefore, there is no evidence to indicate that the ALJ believed Plaintiff was malingering.  As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

"Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc) ("[T]he adjudicator may not discredit the claimant's allegations of the severity of pain *solely* on the ground that the allegations are unsupported by objective medical evidence.") (emphasis added).  However, this does not mean that once an underlying impairment is found the ALJ must believe all of Plaintiff's allegations.  Rather, although a lack of medical evidence cannot form the sole basis for discounting Plaintiff's subjective pain testimony, it is a factor that the ALJ can consider in his credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The Social Security Act provides as follows:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . . [T]here must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . (*including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings*), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms . . . must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (emphasis added).

It is, therefore, permissible for the ALJ to consider, as a factor, whether Plaintiff's testimony is inconsistent with the medical signs and findings.  "Subjective complaints may be discounted if

1  there are inconsistencies in the evidence as a whole." *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.

2  1985) (finding the ALJ had sufficient reason to discount claimant's contentions as to the degree of

3  pain he claimed to experience because it conflicted with the medical evidence and, therefore, lacked

4  credibility).

5      The ALJ demonstrated that Plaintiff's subjective claims were unsupported by objective

6  medical evidence.   The ALJ found as follows:

> I note the rheumatoid factor was negative, and nerve conduction study showed
> negative findings in the upper extremities. Otherwise, repeated clinical examinations
> were essentially normal.   In fact, a comprehensive neurological examination
> conducted in October, 2007, revealed normal extremities, normal gait, and normal
> sensory examination with no evidence for muscular atrophy.   A more recent
> neurological evaluation conducted in February, 2008, was likewise *normal*. Motor
> examination was normal.   Coordination was intact, and there were no Romberg or
> Babinski signs.   Gait was within normal limits without the need for an assistive
> device.  [Plaintiff] is being treated with rather potent medications which cause some
> side effects.  She alleges impaired ability to concentrate and focus, but mental status
> examination was unremarkable.   She also alleges disorientation, but she was fully
> oriented on examination.   Moreover, an MRI of the brain was essentially
> negative. . . . The claimant also alleged back pain; however, straight leg raising was
> negative and no tenderness was elicited in the lumbar spine.   She contends she has
> discoloration in her hands and feet, but the medical record was void of any
> substantiation.   In fact, there was neither rash nor discoloration.   She claims she
> cannot even pick up a coin but, as alluded above, the nerve conduction study of the
> upper extremities was negative with no evidence of carpal tunnel syndrome or ulnar
> neuropathy.  [Plaintiff] testified that she lies down 90% of the day, but I note the
> absence of a medical condition which could reasonably be expected to produce the
> actual pain, in amount and degree, alleged by the claimant.

18  (AR 18-19 (emphasis in original).)

19      Plaintiff argues that the ALJ's findings are inconsistent with the medical record.   In his

20  findings, the ALJ stated that there was no evidence in the record to support discoloration of

21  Plaintiff's hands and feet, and that in Plaintiff's examination with Dr. Huang he found "no skin

22  discoloration."   Plaintiff argues that, contrary to the ALJ's finding, evidence to support this claim

23  was contained in the record at AR 250-52, because Dr. Taylor indicates "[t]here is a purplish

24  discoloration of the toes."   Plaintiff contends, therefore, that the ALJ was incorrect in stating there

25  was no evidence in the record to support this claim.   However, the fact that this particular reason for

26  discrediting Plaintiff's testimony should properly be discounted does not render the ALJ's entire

27  credibility determination invalid, as long as that determination is supported by substantial evidence

28  in the record overall.   *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also*

1   *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("Because we conclude

2   that two of the ALJ's reasons supporting his adverse credibility findings are invalid, we must

3   determine whether the ALJ's reliance on such reasons was harmless error.")  Despite the ALJ's error

4   in finding a lack of evidence to support Plaintiff's claim of discoloration of her hands and feet, there

5   is more than a scintilla of evidence supporting the ALJ's finding that Plaintiff's testimony is

6   inconsistent with the objective medical evidence as a whole.  *Ryan*, 528 F.3d at 1198.  Specifically,

7   the ALJ found, among other things, that (1) testing was negative for back pain, (2) neurological

8   examination of Plaintiff was  normal, with no evidence of muscle atrophy, (3) a nerve conduction

9   study revealed negative findings in Plaintiff's upper extremities, and (4) an MRI of Plaintiff's brain

10  was negative.  (AR 18-19.)

11       Plaintiff further contends that the ALJ was incorrect in concluding that there was not a

12  sufficient medical basis to support Plaintiff's subjective claims.  Plaintiff asserts the ALJ did not give

13  sufficient weight to Plaintiff's elevated inflammatory markers that verify the underlying

14  undifferentiated connective tissue disease.  However, the ALJ specifically found Plaintiff had a

15  severe connective tissue disorder, so the underlying impairment had already been established.  (AR

16  14.)  It was only Plaintiff's subjective claims of the severity of symptoms she experienced that were

17  at issue.  The ALJ noted Plaintiff's elevated sedimentation levels and inflammatory markers, as well

18  as the findings of neuropathy in the lower extremities, which indicates that he considered this

19  evidence in his determination, but ultimately concluded that the weight of the medical evidence did

20  not support a finding of disability.  (AR 18, 20.)  Plaintiff's suggestion that this Court should re-

21  weigh the evidence in her favor is unavailing.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

22  2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may

23  not engage in second-guessing." (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600

24  (9th Cir. 1999))).

25       Inconsistent statements are also appropriately considered in evaluating a claimant's

26  subjective complaints.  The ALJ noted that Plaintiff claimed to experience nervousness when her

27  pain was bad.  However, this is inconsistent with her testimony that she did not believe there was

28  any mental issue that would keep her from working.  In rejecting testimony regarding subjective

symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and her conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas*, 278 F.3d at 958-59. The ALJ may consider whether the Plaintiff's testimony is believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

Additionally, unexplained or inadequately explained failure to seek treatment is another permissible factor in the ALJ's consideration of a claimant's subjective symptoms. *Tommasetti*, 533 F.3d at 1039. The ALJ found that, although Plaintiff testified that she gets nervous when her pain is bad, she had not been receiving treatment from a psychologist or psychiatrist for the symptom of nervousness.

Similarly, the ALJ found that Plaintiff alleged chronic constipation so severe that she apparently does not have a bowel movement for one to two weeks, making her very ill. The ALJ found, however, that no treatment has been sought or received for this problem, other than over-the-counter medications. Plaintiff argues that her participation in the January 2007 research study for opioid-induced bowel dysfunction for patients with chronic nonmalignant pain constitutes treatment. The Commissioner counters that participation in an eight-week experimental drug trial is not treatment, and that the ALJ ultimately decided that, even given this side effect, Plaintiff was not precluded from performing her past relevant work. The goal of the experimental drug trial was to study the "safety, effectiveness and tolerability" of a drug which had not yet been approved by the Food and Drug Administration. (AR 288-89.) Therefore, the study would not be considered treatment because it is not a generally accepted medical practice to prescribe this drug for Plaintiff's condition. *See* 20 C.F.R. § 404.1502 (treatment must be consistent with accepted medical practice). Moreover, simply because Plaintiff participated in the study does not mean that she actually received the drug; as the record indicates, one of the six participants in the study received a placebo. (AR 289.) Therefore, the ALJ did not err in concluding that Plaintiff's participation in the experimental drug research study did not constitute treatment.

Plaintiff maintains that, while the ALJ stated that Plaintiff used over-the-counter medication for treatment of constipation, "the record shows chronic pain management care with narcotic medications throughout which not only have noted side effects but have not been effective." Narcotic medication was administered to treat Plaintiff's pain, not her constipation. Although Plaintiff's constipation may have been caused by her continued use of narcotic medication, the fact that narcotic medication has not been successful in treating her pain is not relevant to the issue of whether Plaintiff received treatment for her constipation.

The Court notes, however, that Plaintiff also received prescription medications for constipation, including Enulose and Zelnorm, indicating that she sought treatment for the symptom. (AR 175, 120.) In any event, as noted previously, the ALJ's error in this regard does not render the ALJ's entire credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall. *See Tonapetyan*, 242 F.3d at 1148; *see also Carmickle*, 533 F.3d at 1162. As discussed above, despite the ALJ's error in finding that Plaintiff only used over-the-counter medication to treat her constipation, there is more than a scintilla of evidence supporting his assertion that Plaintiff's testimony is inconsistent with the objective medical evidence as a whole. *Ryan*, 528 F.3d at 1198.

The ALJ found that Plaintiff's testimony regarding her pain and resulting inability to work is also inconsistent with her conduct and daily activities. Inconsistencies between Plaintiff's testimony and her daily activities are permissible factors in the ALJ's consideration when evaluating a claimant's subjective symptoms. *Tommasetti*, 533 F.3d at 1039; *see also Bray*, 554 F.3d at 1226-27; *Moisa*, 367 F.3d at 885; *Thomas*, 278 F.3d at 958-59; 20 C.F.R. § 404.1529. The ALJ summarized Plaintiff's ability to perform daily functions by stating, "[Plaintiff] is able to manage personal grooming, rides in a car, shops in stores 2-3 times per month for 1 hour, pays bills, counts [change], handles a savings account and uses a checkbook, watches television, and visits on phone or with family 3-4 times a month." (AR 19.) He concluded that this level of activity is consistent with basic work-related activity.

Plaintiff argues that the ALJ failed to appreciate the difference between daily activities and work activities. However, the activities listed by the ALJ are transferable to Plaintiff's ability to

1   perform her past relevant work as an Account Analyst and Accounting Supervisor. *See Orn v.*
2   *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting that daily activities may be grounds for adverse
3   credibility finding if claimant is able to spend substantial part of day engaged in pursuits involving
4   performance of physical functions that are transferable to work setting). It is reasonable to assume
5   that such professions would require Plaintiff to perform personal grooming, travel in a car, handle
6   money and banking accounts, and speak with people in person or on the telephone. Plaintiff further
7   argues that the ALJ's determination is inconsistent with the medical record because the record shows
8   severely reduced daily activities. Based on Plaintiff's testimony regarding her daily activities,
9   however, the ALJ properly discounted Plaintiff's allegations regarding disabling pain and an inability
10  to work.

11      In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective
12  complaints regarding the intensity, duration, and limiting effects of her symptoms. *See Batson v.*
13  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory
14  testimony unsupported by objective medical evidence constituted substantial evidence in support of
15  ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported
16  by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's
17  testimony on permissible grounds and did not arbitrarily discredit her testimony.

18  **B.      The ALJ's Assessment of Treating Physician Dr. Campbell's Medical Opinion**

19      Plaintiff contends that the ALJ erred in giving little weight to Dr. Campbell's opinion. The
20  Commissioner maintains that Dr. Campbell's opinion was entitled to little weight because (1) it was
21  based largely on Plaintiff's subjective complaints which were not supported by the medical evidence,
22  (2) Dr. Campbell initially expected the duration of Plaintiff's disability to be for less than six
23  months, which fails to satisfy the twelve-month duration requirement, and (3) Dr. Campbell did not
24  include "signs, symptoms or other basis" for his opinion, nor did it include a residual functional
25  capacity. Plaintiff argues that objective medical evidence exists to support Dr. Campbell's opinion.
26  Plaintiff also argues that, although initially Dr. Campbell believed Plaintiff would be able to return
27  to work within three to four months, his subsequent extensions of that estimate meet the required
28

duration requirement.  Furthermore, Plaintiff argues that, contrary to the ALJ's finding, Dr. Campbell's opinion did offer specific limitations.

### 1.     Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester*, 81 F.3d at 830.  Generally, a treating physician's opinion should be given more weight than opinions of doctors who did not treat the claimant, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and observe the claimant. *Orn*, 495 F.3d at 631; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician.  The ALJ may give less weight to a treating or examining physician's opinion that conflicts with the medical evidence, if the ALJ provides specific and legitimate reasons for discounting the opinion.  *See Lester*, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); *see also Orn*, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence the treating physician's opinion is 'still entitled to deference.'" (citations omitted)); Social Security Ruling 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[16]

### 2.     Analysis

Here, Dr. Campbell is a treating physician, and as such, his opinion is generally entitled to greater weight than non-treating physicians.  *Lester*, 81 F.3d at 830.  Plaintiff asserts, and the Commissioner does not dispute, that Dr. Campbell's opinion is uncontroverted.  Therefore, pursuant to Ninth Circuit authority, the ALJ must provide clear and convincing reasons for rejecting Dr.

---

[16] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding upon ALJ's. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

1  Campbell's opinion. *Id.* at 830-31. As discussed further below, the Court finds that the ALJ gave

2  clear and convincing reasons supported by the record to discount Dr. Campbell's treating physician

3  opinion.

4        The ALJ explained that Dr. Campbell's opinion was given little weight because it was based

5  on Plaintiff's subjective complaints and not objective evidence. "A physician's opinion . . . premised

6  to a large extent upon the claimant's own accounts of his symptoms and limitations may be

7  disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602

8  (internal quotation marks omitted). Because, as explained above, the ALJ properly discounted

9  Plaintiff's credibility regarding her limitations, the ALJ also properly rejected Dr. Campbell's

10  findings to the extent they were primarily based on Plaintiff's subjective complaints. Dr. Campbell

11  stated that, in coming to his decision, he relied on objective findings of "palpable tenderness to

12  extremities." (AR 325.) However, as the Commissioner correctly points out, this is not an objective

13  finding, but is dependent on Plaintiff's subjective complaints of tenderness. Therefore, the ALJ

14  properly considered and discounted Dr. Campbell's treating source opinion. *See Fair v. Bowen*, 885

15  F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's opinion because it was premised on

16  plaintiff's subjective complaints, which the ALJ had already discounted).

17        The ALJ found Dr. Campbell's medical opinion, as stated on the long-term disability

18  questionnaire, not controlling because Dr. Campbell opined that the expected duration of Plaintiff's

19  disability was for less than six months, which fails to satisfy the required twelve-month duration

20  requirement. (AR 17, 317, 319, 323.) Plaintiff argues that, although Dr. Campbell initially expected

21  Plaintiff's condition to improve within three to four months, Dr. Campbell continually revised that

22  estimate to a length of time greater than one year. "Unless [the] impairment is expected to result in

23  death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

24  20 C.F.R. § 404.1509. Here, there are gaps during the many extensions of time which Plaintiff was

25  expected to be disabled. Thus, Plaintiff has not satisfied her burden of proving a continuous twelve-

26  month period of disability. *See Batson*, 359 F.3d at 1193-94 ("To establish whether he qualifies for

27  benefits, [Plaintiff] has the burden of proving an inability to engage in any substantial gainful activity

28  by reason of any medically determinable physical or mental impairment which . . . has lasted or can

1    be expected to last for a continuous period of not less than 12 months.") (internal quotation marks

2    omitted).

3         Plaintiff also argues that, contrary to the ALJ's holding, Dr. Campbell's opinion, as stated

4    on the questionnaire, did not "lack all signs, symptoms or other basis," but instead offered "specific

5    limitations including sitting and standing for less than an hour daily along with unspecified

6    limitations in posture and handling."   Plaintiff concedes, however, that many of Dr. Campbell's

7    limitations were not quantified.   The Commissioner argues that any stated limitations were

8    conclusory and lacked any objective verification of the symptoms alleged.   The ALJ can discount

9    a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical

10   findings." *Thomas*, 278 F.3d at 957.   Therefore, the ALJ did not err in discounting Dr. Campbell's

11   opinion as stated on the long-term disability questionnaire.   Moreover, because the lack of supporting

12   clinical findings is a valid reason for rejecting a treating physician's opinion, this lack of evidence

13   was also a clear and convincing reason to discount the opinion of Dr. Campbell.   *See Magallanes*

14   *v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1195 (affirming ALJ's

15   rejection of the controverted opinion of claimant's treating physician because the opinion was

16   conclusory, in checklist form, and not supported by the record as a whole, or by objective medical

17   findings).

18        In sum, the ALJ cited clear and convincing reasons for giving less weight to Dr. Campbell's

19   opinion based on Plaintiff's subjective complaints regarding the intensity, duration, and limiting

20   effects of her symptoms.

21                                      **CONCLUSION**

22        Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

23   evidence in the record as a whole and is based on proper legal standards.   Accordingly, the Court

24   DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

25   The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

26   ///

27   ///

28   ///

1    Commissioner of Social Security, and against Plaintiff Kimberly Ann Bales.

2

3    IT IS SO ORDERED.

4    Dated:    **March 14, 2011**                              _____**/s/ Sheila K. Oberto**_____
                                                       UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28